Filed
8/1/2016 7:33:07 PM
Esther Degollado
District Clerk
Webb District
Esmeralda Alvarado
2016CVT002066D1

CAUSE NO. 2016CVT002066D1

| | | |
|---|---|---|
| JAVIER QUIROZ AND JUANITA QUIROZ | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | 49th JUDICIAL DISTRICT |
| | § | |
| METLIFE AUTO AND HOME INSURANCE AGENCY, INC.; METLIFE AUTO & HOME; METROPOLITAN LLYODS, INC.; AND METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS. | § | |
| | § | |
| *Defendants.* | § | WEBB COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JAVIER QUIROZ AND JUANITA QUIROZ (hereinafter referred to as "Plaintiffs"), and file this Plaintiffs' Original Petition, complaining of METLIFE AUTO AND HOME INSURANCE AGENCY, INC., METLIFE AUTO & HOME, METROPOLITAN LLOYDS, INC. and METROPOLITAN LLOYDS COMPANY OF TEXAS (hereinafter referred to as "Defendants or MetLife") and would respectfully show the Court as follows:

## I. PARTIES

1. Plaintiffs, JAVIER QUIROZ ("Javier") and JUANITA QUIROZ ("Juanita") are residents of Laredo, Webb County, Texas (collectively, "Plaintiffs").

2. Defendants, METLIFE AUTO AND HOME INSURANCE AGENCY, INC. AND METLIFE AUTO & HOME, is an insurance company that has a principal place of business in the State of Texas located at Two Galleria Tower, 13455 Noel Road, Suite 2110. Dallas, TX 75240 and

conducts business in Webb County, Texas and may be served with citation by serving its registered agent CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136 or wherever it may be found. METROPOLITAN LLOYDS, INC. and METROPOLITAN LLOYDS COMPANY OF TEXAS are Texas Corporations and may be served CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136 or wherever it may be found.

## II. DISCOVERY LEVEL

3. Plaintiffs plead that discovery should be conducted under a Level 3 tailored discovery control plan under Texas Rule of Civil Procedure 190.4.

## III. VENUE

4. Venue of this lawsuit is proper in Webb County, Texas because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Webb County, Texas. Therefore, venue of this lawsuit is proper in Webb County, Texas, pursuant to §15.002(a)(1) of the Texas Civil Practice & Remedies Code.

## IV. JURISDICTION

5. Plaintiffs invoke the jurisdiction of this Court pursuant to Article V, Section 8 of the Texas Constitution.

6. Plaintiffs invoke the jurisdiction of this Court pursuant to the Texas Government Code, §§ 24.007 and 24.008 and pleads that the amount in controversy is within the jurisdictional limits of this Court.

## V. STATEMENT OF FACTS

7. Plaintiffs bring these claims against MetLife as a result of an auto collision with Casey Hansell Adams ("Adams"), an under-insured motorist, which occurred on August 1, 2012, at the 3200 block of Shiloh Dr., Laredo, Texas at approximately 5:26 a.m. The collision involved two

motor vehicles. The first vehicle, a 2009 Hyudai Genesis, described in the accident report owned and driven by Casey Hansell Adams (hereinafter "Unit #1"). The second vehicle, a 2012 Toyota Tundra, was driven by Javier Quiroz (hereinafter "Unit #2"). As Javier approached Kirby Dr. intersection, he was blindsided by a silver 2009 Hyudai Genesis with such force, that his truck flipped over on its left side and slid several car lengths. He was left inside his truck returned to an upright position, sunned and in pain.

8.      At the time of the accident described above, Plaintiffs had an auto insurance policy with MetLife ("Policy"), and the Policy provided for Underinsured/Uninsured Motorist Protection Coverage in the event an underinsured/uninsured driver was involved in a collision with a covered vehicle or person.

9.      Plaintiffs sued the Adams for negligence and sought to recover personal injury damages from Adams. Javier was lucky enough to escape from the collision with his life, but unfortunately, sustained injuries that have caused him extreme pain throughout his body. He recalls the multiple cuts to his head and chest; the chest bruises resulting from the seat belt restraining his body; the dizziness and headaches as well as the extreme lower back pain. His pain was so severe so as to awaken him every night. He was not able to work for six months after the accident, being forced to use every accumulated sick day, vacation and disability program he could obtain. He continues to have symptoms to this day, including lower and middle back pain exacerbated by most normal activities, including standing, walking, working, and other everyday activities.

10.     As would be expected, Javier's pain is both physically and mentally taxing and has put a strain on his family relationships. He has limited ability to participate in the type of activities that he regularly enjoyed pre-collision, including but not limited to going to the grocery store with his wife, dancing at weddings, helping with the housework and going to the beach. His pain becomes intolerable after standing for more than ten minutes. His most alarming symptoms, however, were

the series of headaches, dizziness, slurred speech and double vision he began to suffer after the accident.

11.     Within weeks of the accident, Javier was rushed to Doctor's Hospital in Laredo after his speech became slurred and unintelligible. Juanita recalls how terrified she became after her husband stared at her blankly while speaking 'gibberish'.

12.     In early 2013, Javier suffered another episode in which he had severe double vision followed by severe headaches. The dizziness and headaches continue to this day.

13.     As of 2015, Javier has incurred over $40,000 in unadjusted medical bills and over $21,000 in medical expenses after adjustments.

14.     In order to treat his injuries, Javier has consulted with several physicians, including an Orthopedic Surgeon from San Antonio, Texas, Dr. Sanjay Misra. Dr. Sanjay Misra believes that, should epidural steroid injections not improve his condition, Mr. Quiroz will require lumbar surgery. Moreover, Mr. Quiroz's neurosurgeon provides:

> "Mr. Quiroz has exhausted conservative measures. I recommend a series of epidural steroid injections. If he does not improve and continues in severe lumbar pain I recommend a Discogram for his lumbar area. If the Discogram is positive he will require lumbar surgery microdiscectomy with minimally invasive tubular retractor at positive level. The cost of the surgery will be around $45,000.00-$50,000.00. The Facility fees $25,000.00, Surgeon fees
>
> $10,000.00, Anesthesia fees $3,500.00, Rehab fees $5,000.00. Essentially the patient is going to have some long term physical restrictions. I do not want him to do any heavy lifting beyond 10-15 lbs and no overhead reaching these are the restriction limitations he is under now and will be his restriction limitation sin the future. Medications will be required in now and in the future he will need chronic over-the-counter medications such as Motrin, Naprosyn, and the occasional use of pain killers such as Ultram. The cost of these medications will be around $1,000.00 yearly. Based upon a reasonable degree of medical probability he is going to have about a 15% total body impairment even after the surgery in the future. This injury is definitely painful and is a result of the accident."

"Based on my knowledge and experience in the diagnosis and treatments of lumbar injury . . . it my opinion that in reasonable medical probability, Mr. Quiroz' lumbar injury occurred as a result of an auto accident August 1, 2012."

15. Despite the periodic steroid injections, Javier's back pain continues to return. Javier's lost earnings are in excess of $34,766.12. He was not able to return to work until February 4, 2013. Further, as indicated above, his future medical expenses are in excess of $100,000.00, not to mention the tremendous pain and suffering he has suffered and continues to suffer daily.

16. Therefore, a jury would have returned a verdict for Javier in excess of $500,000.00. Unfortunately, Adams' USAA insurance policy limits were only $50,000. Reluctantly, but with no other choice, and with MetLife's consent, Javier settled his claim with Adams for policy limits.

17. Javier's damages are still in excess of $450,000.00. Therefore, Plaintiffs are entitled to claim the remainder of her damages under the Policy's Underinsured/Uninsured Motorist Protection.

18. On or about November 2014, Javier made a demand on MetLife to cover Javier's injuries and outstanding medical bills, pursuant to the Underinsured/Uninsured Motorist Protection Coverage provision. MetLife has refused to provide coverage for the extent of her injuries.

## VI. PLAINTIFFS' CAUSES OF ACTION

## A. DECLARATORY JUDGMENT ON THE POLICY:

19. Plaintiffs incorporate herein by reference all of the allegations which have been made above. Plaintiffs incorporate herein by reference the remedial provisions set forth in Chapter 37 of the Texas Civil Practice and Remedies Code. Plaintiffs respectfully request this Court to declare the parties' rights, duties, status or other legal relations pursuant to and under the Policy, in view of MetLife's obligations with regard to the Underinsured/Uninsured Motorist Protection under the Policy. Plaintiffs requests this Court to find that Plaintiffs' loss is covered under the Policy, that MetLife is contractually obligated to provide coverage under the Policy as described herein and that this Court determine the amounts to which Plaintiffs are entitled. Furthermore, Plaintiffs

respectfully request this Court to declare the parties' rights, duties, status or other legal relations pursuant to V.T.C.A., Bus. & C. §17.46 and V.T.C.S., Insurance Code §541 et seq.

## B. BREACH OF CONTRACT:

20.     Plaintiffs incorporate herein by reference all of the allegations which have been made hereinabove. MetLife breached the Policy by failing to provide coverage, in the form of payment for losses incurred, from the accident. As a direct and proximate result of MetLife's breach of the Policy, Plaintiffs have suffered actual damages in excess of the jurisdictional limits of this Court.

## C. DECEPTIVE TRADE PRACTICES:

21.     Plaintiffs incorporate herein by reference all of the allegations which have been made hereinabove. At all relevant times, Plaintiffs were consumers as defined by V.T.C.A., Bus. & C. §17.45.

22.     At the time that Plaintiffs sought or acquired the Policy or any renewal thereof, MetLife, and/or its agents, failed to state that MetLife would refuse to provide the coverage that the Policy provided for in the event of an underinsured motorist causing damages to Plaintiffs and further represented that the insurance policy sold by MetLife, and purchased by Plaintiffs, provided for coverage to Plaintiffs in the event of an underinsured motorist causing damages to Plaintiffs.

23.     Plaintiffs contend that such representations were made by MetLife and/or their agents, servants, employees, and/or representatives, in the course of a consumer transaction. Such representations constitute false, misleading or deceptive acts or practices under V.T.C.A., Bus. & C. §17.46.

24.     More specifically, MetLife is guilty of the following false, misleading, and deceptive acts or practices:

   a.     Representing that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

b.   Representing that an agreement confers, or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

c.   The failure to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and/or

d.   Failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made.

25.   Plaintiffs further allege that MetLife engaged in unconscionable actions or courses of action. In particular, MetLife took advantage of the lack of knowledge of Plaintiffs, its officers, agents, or employees to a grossly unfair degree.

26.   The false, misleading or deceptive acts or practices and unconscionable action or course of action committed by MetLife were the producing cause of Plaintiffs actual damages in excess of the minimum jurisdictional limits of this Court.

27.   The false, misleading or deceptive acts or practices and/or unconscionable action or course of action of MetLife was committed knowingly.

D.   UNFAIR INSURANCE PRACTICES:

28.   Plaintiffs hereby incorporates all of the allegations set forth above. At the time Plaintiff's sought or acquired the Policy or any renewals thereof, MetLife, and/or of its agents, failed to state that MetLife would refuse to provide the coverage that the Policy provided for in the event of an underinsured motorist causing damages to Plaintiffs in addition MetLife, and/or its agents represented that the Policy provided coverage in the event of an underinsured motorist causing damages to Plaintiffs. Plaintiffs contend that the above representations or omissions were made by MetLife, through its agents, servants, employees, and/or representatives, in the course of a consumer transaction. Such representation or omissions constitute unfair and deceptive acts or

practices under V.T.C.S., Insurance Code §541.061. More specifically, MetLife is guilty of the following unfair and deceptive acts or practices in violation of V.T.C.S., Insurance Code §541.061:

    a.    Failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

    b.    Making an untrue statement of material fact;

    c.    Making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact; and/or

    d.    Failing to disclose any matter required by law to be disclosed, including a failure to make a disclosure in accordance with another provision of the Insurance code.

29.    The above and foregoing unfair and deceptive acts or practices were the producing causes of Plaintiff's actual damages in excess of the minimum jurisdictional limits of this Court.

30.    The above and foregoing unfair and deceptive acts or practices committed by MetLife were committed knowingly.

## E. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING:

31.    Plaintiffs hereby incorporate all of the allegations set forth above. MetLife owed Plaintiffs a duty of good faith and fair dealing with regard to Plaintiffs' claims. MetLife has refused to accept Plaintiffs' claim(s) without any reasonable basis despite Plaintiffs' significant damages. MetLife's conduct constitutes a breach of their duty of good faith and fair dealing owed to Plaintiffs. As a direct and proximate cause of MetLife's breach, Plaintiffs have suffered actual damages in excess of the minimum jurisdictional limits of this Court.

## F. NEGLIGENCE:

32.    Plaintiffs hereby incorporate all of the allegations set forth above. MetLife owed Plaintiffs a duty to exercise reasonable care to properly process, investigate and ultimately pay Plaintiffs for the underinsured losses suffered due to the Accident. MetLife's conduct as described herein constitutes a breach of the duty owed to Plaintiffs to pay for the damages it suffered as a result of the uninsured

losses. As the direct and proximate result of MetLife's conduct, Plaintiffs have suffered actual damages in excess of the minimum jurisdictional limits of this Court.

## G. NEGLIGENT MISREPRESENTATIONS:

33.     Plaintiffs hereby incorporate all of the allegations set forth and contained in paragraph 1 through 15 above. The representations made by MetLife that the insurance policy sold by MetLife and purchased by Plaintiffs provided for coverage in the event of damages resulting from an underinsured motorist. The above and foregoing representations made by MetLife constituted false information which was justifiably relied upon by Plaintiffs. These representations made by MetLife, by and through its agents, servants, employees, and /or representatives, were made in the course of their business, profession, or employment, and MetLife failed to exercise reasonable care or competence in communication of the information.

34.     As a direct and proximate result of the above and foregoing negligent misrepresentations, Plaintiffs have suffered actual damages in excess of the minimum jurisdictional limits of this Court.

## H. UNJUST ENRICHMENT:

35.     Plaintiffs incorporate herein by reference all of the allegations which have been made hereinabove. MetLife has failed to abide by the Agreement entered into as described herein. Accordingly, it would be unjust for MetLife to obtain the benefits of such wrongful conduct. Therefore, in the event that the Agreement described herein is unenforceable or thwarted for any legal reasons, Plaintiffs invoke the equitable power of this Court to allow Plaintiffs to recover the reasonable value of all money and property taken by MetLife as well as all profits made by MetLife resulting from such wrongful conduct in excess of the minimum jurisdictional limits of this Court for which Plaintiffs now sue.

## VII. ATTORNEYS' FEES

36.     Plaintiffs incorporate herein by reference all of the allegations made above. As a result of MetLife's conduct further described hereinabove, Plaintiffs have been forced to hire the undersigned attorneys to prosecute this action. In retaining counsel, Plaintiffs agreed to compensate their attorneys with a reasonable, necessary, usual, and customary fee. Plaintiffs' claim for declaratory judgment entitles it to recovery of attorneys' fees and costs. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). In addition, Plaintiffs' are entitled to recover attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001, et seq., Tex. Civ. Prac. & Rem. Code Ann. § 134.005, V.T.C.S., Insurance Code §541.152, V.T.C.A. and Bus. & C. §17.50, et seq. Moreover, a successful party may recover its costs against its adversary. Tex. R. Civ. P. 131.

37.     Plaintiffs hereby specifically requests that they be awarded reasonable and necessary attorneys' fees and expenses incurred in prosecuting this case through trial and for any appeal made in this cause to the Court of Appeals and/or the Texas Supreme Court.

## VIII. ADDITIONAL DAMAGES

38.     Plaintiffs hereby incorporate by reference all of the allegations which have been made hereinabove. As further described herein, Plaintiffs have suffered substantial damages in excess of the minimum jurisdictional limits of this Court. Plaintiffs are therefore entitled to all damages for which Plaintiffs now sue, including but not limited to all actual damages.

39.     In addition, the Accident was the proximate cause of Plaintiffs' serious damages which include physical pain, mental pain and suffering and physical disfigurement.

## IX. JURY DEMAND

40.     Pursuant to Texas Rule of Civil Procedure 216, Plaintiff hereby demands a trial by jury on its claim.

## X. CONDITIONS PRECEDENT

41.     All conditions precedent have been performed and have occurred.

## XI. PRAYER

42.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that it be awarded the

following against MetLife:

1.      Declaratory Judgment declaring the parties' rights, status, duties, obligations or other legal relation pursuant to and under the Policy, as alleged hereinabove;

2.      Actual damages as further described hereinabove;

3.      Reasonable and necessary attorneys' fees;

3.      Pre- and post-judgment interest as allowed by law;

4.      Court costs; and

5.      Such other legal and equitable relief to which Plaintiffs may show itself justly entitled to receive.

Respectfully submitted,

PERSON, WHITWORTH,
BORCHERS & MORALES, L.L.P.
P. O. Drawer 6668
602 East Calton Rd.
Laredo, Texas 78042-6668
Telephone No. (210) 727-4441
Facsimile No. (210) 727-2696

By:_____
RICARDO E. MORALES
SBN 00794331
Attorneys for Plaintiffs